1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                  DISTRICT OF NEVADA

8                                          * * *

9    BRANDY HALL,                          )
                                           )
10                      Plaintiff,         )            03:11-CV-00137-LRH-VPC
                                           )
11   v.                                    )
                                           )            ORDER
12   HIGH DESERT RECYCLING, INC., a        )
     Nevada corporation; AMERICAN          )
13   SHREDDING, INC., a California corporation; )
     CINDY FELTON, in her official capacity; and )
14   STEVE SUTTA, individually and in his  )
     official capacity; and Does 1-10,     )
15                                         )
                        Defendants.        )
16   _____ )

17          Presently before the court is Defendants Cindy Felton ("Felton") and Steve Sutta's ("Sutta")

18   motion to dismiss. Doc. #8.[1] Plaintiff Brandy Hall ("Hall") filed an opposition (Doc. #15) to which

19   Felton and Sutta replied (Doc. #17).

20   **I. Factual Background**

21          This is a pregnancy discrimination and retaliation action brought by Hall pursuant to

22   Title VII of the 1964 Civil Rights Act (as amended in 1991, 42 U.S.C. § 2000e *et. seq.*) and the

23   Pregnancy Discrimination Act of 1978 (as codified in 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k)). The

24   case arises out of the alleged discrimination and wrongful termination of Hall by Defendants High

25

26
     _____
            [1] Refers to the court's docket number.

Desert Recycling, Inc. ("High Desert") and American Shredding, Inc. ("American Shredding"). In February 2008, Hall began working for High Desert and American Shredding. In July 2009, Hall informed her employer that she was pregnant. Thereafter, her supervisors, Felton and Sutta, allegedly changed the terms and conditions of her employment by placing limitations and performance goals on her that were not placed on non-pregnant employees. In response to these changes, Hall informed Sutta of her intention to file a discrimination complaint with the EEOC, for which she was subsequently terminated.

On February 23, 2011, Hall filed a Title VII discrimination complaint against High Desert; American Shredding; Felton, in her official capacity; and Sutta, in his official capacity and individually as the alter ego of High Desert and American Shredding. Doc. #1. Thereafter, Felton and Sutta filed the present motion to dismiss the claims against them in their official capacities and the claim against Sutta as the alter ego of High Desert and American Shredding. Doc. #8.

**II.  Legal Standard**

Felton and Sutta seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows

2

1   the court to draw the reasonable inference, based on the court's judicial experience and common

2   sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility

3   standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

4   defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

5   defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

6   relief." *Id.* at 1949 (internal quotation marks and citation omitted).

7          In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as

8   true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of

9   the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret*

10  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (brackets in original)

11  (internal quotation marks omitted). The court discounts these allegations because "they do nothing

12  more than state a legal conclusion—even if that conclusion is cast in the form of a factual

13  allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to

14  dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be

15  plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

16  **III.  Discussion**

17         In seeking an order dismissing the claims raised against them in their official capacities,

18  Felton and Sutta argue that they should be dismissed because Hall has also named their employers,

19  High Desert and American Shredding, as Defendants in her complaint. *See* Doc. #8. Further, Sutta

20  argues that he is not the alter ego of High Desert and American Shredding, and thus cannot be held

21  individually or jointly liable for any judgment. *Id.*

22         **A.  Official Capacity Liability**

23         Civil liability under Title VII is limited to employers. *See* 42 U.S.C. § 2000e-5(g). The term

24  "employer" under Title VII is defined to include any agent of the employer. 42 U.S.C. § 2000e(b).

25  The Ninth Circuit interprets the agent provision of Title VII as a means by which to incorporate

26

3

respondeat superior liability into the statute. *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). Under the *Miller* framework, a plaintiff may recover against an employer under Title VII by naming either the supervisory employees as agents of the employer *or* by naming the employer directly. *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1125 (10th Cir. 1993); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991); *see also*, *Ortez v. Washington Cnty.*, 88 F.3d 804, 808 (9th Cir. 1996) (finding that the plaintiff did state a claim against defendants in their official capacities and against employer, Washington County, under the theory of respondeat superior).

However, where a supervisory employee is joined as an agent in a Title VII action, it is the employer who is ultimately liable for the Title VII violation. *Canada v. Boyd Group, Inc.*, 809 F.Supp. 771, 781 (D. Nev. 1992); *see also, Christian v. Nevada Public Works Bd.*, 2009 WL 1407990 (D. Nev. 2009) (dismissing individual defendants because Title VII imposes liability only on employers, not on individual employees). Thus, official capacity claims under Title VII are unnecessary and duplicative where the plaintiff has also brought a Title VII claim against the alleged employer. *Cooke-Seals v. District of Columbia*, 973 F.Supp. 184, 187 (D.D.C. 1997). Such claims against individuals in their official capacity merge with claims against the employer, and the individuals may be dismissed within the court's discretion. *Taylor v. ScottPolar Corp.*, 995 F.Supp. 1072, 1079 (D. Ariz. 1998); *see also, Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (applying the respondeat superior theory under *Miller* and affirming order to dismiss employee in his official capacity where employer was also joined).

Here, Hall's claim against Felton and Sutta in their official capacities is the functional equivalent of her claim against Felton and Sutta's employers, Defendants High Desert and American Shredding. Thus, these claims are unnecessarily repetitive. Accordingly, the court shall grant Felton's and Sutta's motion to dismiss Hall's official capacity claims.

**B.  Liability Under Alter-Ego Theory**

The doctrine of alter-ego liability allows a creditor to reach the personal assets of a

1    controlling individual to satisfy a corporation's debt. *LFC Marketing Group, Inc. v. Loomis*, 8 P.3d

2    841, 846 (Nev. 2000). In order to state a claim for alter-ego liability in Nevada, a plaintiff must

3    allege that: "(1) [t]he corporation [is] influenced and governed by the person asserted to be its alter

4    ego[;] (2) [t]here [is] such unity of interest and ownership that one is inseparable from the other;

5    and (3) [t]he facts [are] such that adherence to the fiction of separate entity would, under the

6    circumstances, sanction a fraud or promote injustice." *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 496

7    (Nev. 1998) (quoting *McCleary Cattle Co. v. Sewell*, 317 P.2d 957, 959 (Nev. 1957)). The court

8    shall address each element in turn below.

9            First, a plaintiff must plead with specificity that the alleged alter ego influences and governs

10   the corporation. *Id.* In alleging that Sutta "has exercised complete dominance and control over

11   Defendants High Desert and American Shredding, such that Defendant High Desert and/or

12   American Shredding is/are a mere shell and instrumentality for the conduct of the personal business

13   and activities of Defendant Sutta" (Doc. #1, ¶60), the court finds that Hall has satisfied this

14   element.

15           Second, a plaintiff must plead with specificity that there is such unity of interest and

16   ownership that the alleged alter ego and the corporation are inseparable. *Id.* Although there is no

17   precise litmus test for determining when there is unity of interest and ownership for purposes

18   of alter-ego liability, the following factors are considered relevant: co-mingling of funds,

19   undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the

20   individual's own, and failure to observe corporate formalities. *Polaris Indus. Corp. v. Kaplan*,

21   747 P.2d 884, 887 (Nev. 1987). Because no one factor is determinative, a court's inquiry is

22   fact-intensive and must rely heavily on the particular circumstances of each case. *Mesler v. Bragg

23   Mgmt. Co.*, 702 P.2d 601, 606 (Cal. 1985). Allegations of two or three factors have been held

24   sufficient to defeat a 12(b)(6) motion to dismiss. *See e.g.*, *Axon Solutions, Inc. v. San Diego Data

25   Processing Corp.*, 2010 WL 1797028, at *3 (S.D. Cal. May 4, 2010) (denying motion to dismiss

26

                                                        5

1  alter-ego claim when the plaintiff pled commingling of funds, undercapitalization, and

2  representation by one entity that is liable for the other's debts).

3          In her complaint, Hall alleges a number of factors that, if true, plausibly support an

4  inference that there existed a unity of interest and ownership between Sutta and Defendants High

5  Desert and American Shredding. Specifically, Hall asserts that High Desert and American

6  Shredding had insufficient funds to capitalize the individual corporations; failed to follow corporate

7  formalities; and failed to maintain separate corporate records. Doc. #1, ¶60. Further, Hall alleges

8  that Defendant Sutta commingled and used the assets of High Desert and American Shredding for

9  his own benefit; transferred assets between High Desert and American Shredding without adequate

10  consideration; and exercised complete dominance and control over High Desert and American

11  Shredding, such that the corporations were a mere shell and instrumentality for Sutta's own

12  personal business and activities. *Id.* Based on the allegations in the complaint, the court finds that

13  Hall has pled the second element of alter-ego liability with adequate factual specificity.

14          Finally, a plaintiff must plead with specificity that fraud or injustice would result if the

15  corporation is permitted to maintain the fiction of a separate identity. *Sonora Diamond Corp. v.*

16  *Superior Court*, 83 Cal. App. 4th 523, 539 (2000). "The rule is firmly settled that no reliance can be

17  had on [the alter-ego] theory in the absence of *pleading* that recognition of the corporate entity

18  would sanction a fraud or promote injustice." *Meadows v. Emett & Chandler*, 222 P.2d 145, 147

19  (Cal. Dist. Ct. App. 1950). In the absence of fraud or injustice to the aggrieved party, evidence of

20  unity of interest and ownership is insufficient to disregard the corporate entity. *N. Arlington Med.*

21  *Bldg., Inc. v. Sanchez Const. Co.*, 471 P.2d 240, 244 (Nev. 1970). Furthermore, the plaintiff must

22  plead sufficient facts to plausibly assert that he or she will be damaged by the abuse of the

23  corporate entity. *Mid-Century Ins. Co., v. Gardener*, 9 Cal. App. 4th 1205, 1212 (1992). This

24  requirement ensures that the corporate veil is disregarded only when justice so requires.

25  *N. Arlington Med.*, 471 P.2d at 244.

26

The mere possibility that a plaintiff may have difficulty enforcing a judgment against the corporate entity "alone is not the type of injustice that warrants piercing the corporate veil." *Lowell Staats Min. Co. Inc. v. Pioneer Uravan Inc.*, 878 F.2d 1259, 1262 (10th Cir. 1989); *see also, N. Arlington Med.*, 471 P.2d at 244-45 (holding that the plaintiff may not infer injustice on the basis of a fiction of separateness where there is no causal connection between the corporation's financing and its inability to pay a judgment). Thus, a plaintiff must plead sufficient facts to plausibly assert that unless the individual defendant is held personally liable, she will be precluded from adequately pursuing her claims for compensatory and punitive damages. *Id.* Specifically, a plaintiff must plead sufficient facts that plausibly assert that the financial setup of the corporation will render the defendant unable to pay a judgment against him or her. *Id.* (citing *Carlesimo v. Schwebel*, 197 P.2d 167 (Cal. Dist. Ct. App. 1948)).

Here, Hall's conclusory allegation that adherence to the fiction of a separate corporate entity would sanction a fraud and permit an abuse of the legal benefits of true corporations is insufficient to raise her right of relief beyond mere speculation. Hall fails to specifically allege how or why holding only High Desert and/or American Shredding liable for an underlying Title VII violation would result in fraud or injustice. Without further factual allegations, the court cannot draw a reasonable inference that Sutta should be held liable as an alter ego of Defendants High Desert and American Shredding. However, contrary to Sutta's argument, Hall need not have already suffered a concrete injury of fraud or injustice to adequately plead an alter-ego cause of action. Hall need only properly plead that adherence to the fiction of a separate corporate entity *would* sanction fraud or promote manifest injustice. Therefore, based on the allegations in the complaint, the court shall grant Sutta's motion to dismiss the alter-ego claim.

///

///

///

1       IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. # 8) is

2  GRANTED without prejudice.

3       Plaintiff is GRANTED leave to amend within ten days.

4       IT IS SO ORDERED.

5       DATED this 29th day of June, 2011.

8                  _____
                         LARRY R. HICKS
                         UNITED STATES DISTRICT JUDGE